IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

STEPHEN ROCHESTER, JERMAINE WILKINS, and RAYMOND DONNERSTAG,

    Plaintiffs,

vs.

CITY OF EAST ORANGE,

    Defendant.

Civil Action No. 2:12-cv-05988-DMC-JAD

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO AUTHORIZE NOTICE TO POTENTIAL CLASS MEMBERS AND NOTICE OF NO OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT II OF PLAINTIFFS" COMPLAINT**

# **TABLE OF CONTENTS**

1. PROCEDURAL HISTORY……………………………………………………… 1

2. DEFENDANT'S ARGUMENTS ARE MISPLACED…………………………..... 2

A. Plaintiffs' Motion to Conditionally Certify a Class SHOULD NOT be decided, at this juncture, based upon the merits of whether Plaintiffs are actually owed overtime……………………………………………………………………………. 4

B. The cases cited by Defendant, when read completely and shepardizeed, actually inure to the benefit of Plaintiffs………………………………………………………………….. 8

C. Plaintiffs have clearly stated a common Employer Practice in Violation of the FLSA as applied to all Plaintiffs and others similarly situated potential opt-in Plaintiffs…………………………………………………………………………… 13

D. Plaintiffs have sufficiently shown that there are others who desire to join this action…………………………………………………………………………………. 14

E. Plaintiffs do not oppose to Defendant's Point II, dismissing count II of Plaintiffs' complaint………………………………………………………………………….... 14

3. CONCLUSION……………………………………………………………. 15

## **TABLE OF AUTHORITIES**

Smith v. Sovereign Bancorp, Inc.,
CIV. A. 03-2420, 2003 WL 22701017 (E.D. Pa. Nov. 13, 2003)……………………………...3, 4

Bittick v. City of Foristell,
4:11 CV875MLM, 2011 WL 6945106 (E.D. Mo. Dec. 30, 2011)………………………….…7

Davis v. Novastar Mortg., Inc.,
408 F. Supp. 2d 811, 815 (W.D.Mo.2005)……………………………………………………….7

Courtright v. Bd. of Cnty. Comm'rs of Payne Cnty., Okla;
CIV-08-230-D, 2011 WL 2181954 (W.D. Okla. June 3, 2011)…………………………….... 8

Armstrong v. Weichert Realtors,
CIV.A. 05-3120 (JAG), 2006 WL 1455781 (D.N.J. May 19, 2006)……………………………. 9

Murton v. Measurecomp, LLC,
2008 WL 5725631 (N.D. Ohio June 9, 2008)…………………………………………………… 9

Dryer v. Altchem Envtl. Servs., Inc.,
CIV 06-2393 (RBK). 2007 WL 7186177, *3 (D.N.J. Sept. 25, 2007)…………………………. 10

Rogers v. Ocean Cable Grp. Inc.,
CIV. 10-4198 NLH KMW, 2011 WL 6887154, (D.N.J. Dec. 28, 2011)………………………. 11

Salmon v. Adderley Industries, Inc.,
847 F. Supp. 2d 561, 565 (S.D.N.Y. March 6, 2012)……………………………………... 12

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO AUTHORIZE NOTICE TO POTENTIAL CLASS MEMBERS AND NOTICE OF NO OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT II OF PLAINTIFFS" COMPLAINT**

Plaintiffs, STEPHEN ROCHESTER, JERMAINE WILKINS, and RAYMOND DONNERSTAG, on behalf of themselves and all others similarly situated ("Plaintiffs"), by and through undersigned counsel and pursuant to the Federal Rules of Civil Procedure and the Local Rules of the District of New Jersey, hereby file this Reply in Support of their Motion to Authorize Notice to Potential Class Members. In support thereof, Plaintiffs state the following:

**PROCEDURAL HISTORY**

1. On March 5, 2013, this Honorable Court issued a Scheduling Order requiring that all Motions to add parties be filed by no later than May 30, 2103. (DE 24).

2. On June 13, 2013, Matthew Giacobbe, Esq., of Cleary, Giacobbe, Alfieri, and Jacobs, representing the City of East Orange, Matthew Areman, Esq., attorney for the FOP in the subject contract negotiations, Plaintiff Stephen Rochester, FOP Lodge President Tanya Pulyado, Jillian Barrick, the City Administrator, all appeared before Susan W. Osborne, the Interest Arbitrator, to engage in contract negotiations; this appearance was completely unrelated to the instant lawsuit.[1]

3. On or about June 26, 2013, well in advance of Defendant filing his Opposition to Plaintiffs; Motion for Conditional Class Certification, the undersigned emailed counsel for Defendant informing Defendant that additional law enforcement officers of Defendant, complaining of the same overtime violations, desired to join the within action. (See Exhibit "A",

---

[1] The undersigned can only assume that questions about the within lawsuit and the underlying FLSA claims were not raised to Plaintiff Rochester, since he was there unrepresented. Counsel for Defendant knows that Mathew Areman, Esq. was only present in his capacity as a contract negotiator for the FOP, and is in no way involved in this FLSA lawsuit.

twenty (20) consent to joins) The undersigned asked for Defendant's consent for Plaintiffs to file a Motion to add the new plaintiffs to the within lawsuit.

4. Shortly after a second email was sent to counsel for Defendant on July 1, 2013, and again, prior to Defendant's filing his Opposition to the Motion to Condition Class Certification, counsel for Defendant wrote that Defendant did not consent to Plaintiffs adding additional opt-in Plaintiffs to the instant matter.

5. Later that same date, July 1, 2013, counsel for Defendant filed Defendant's Opposition to Plaintiffs' Motion for Conditional Class Certification, and Defendant's Cross-Motion to Dismiss Count II of the Complaint. (DE 36, hereinafter referred to as "Defendant's Reply").[2] Counsel's brief neglects to inform the Court of his knowledge of the additional opt-in officers that desire to join the instant action and further argues throughout, ignoring this information in whole.

6. There are currently forty two (42) law enforcement officers complaining about identical violations against Defendant.

7. Although Defendant objected to all interrogatories propounded upon it by Plaintiffs', providing little to no information requested, and only provided self-serving "Time-Worked Reports" in response to Plaintiffs' Request for Production of Documents, Plaintiffs provided Defendant with twenty-two (22) separate detailed Answers to Defendant's Interrogatories. (Attached hereto as Exhibits "B," and "C" are Defendant's responses to Plaintiffs' discovery requests, and Plaintiffs' discovery responses to Defendant's discovery requests, respectively).

## **DEFENDANT'S ARGUMENTS ARE MISPLACED**

---

[2] In Defendant's Opposition papers they conspicuously neglected to mention to this Honorable Court that there were an additional opt-in Plaintiffs that expressed an interest in joining this lawsuit.

Defendant attempts to divert this Court's attention from the two issues relevant to the within Motion, mainly, (1) whether Plaintiffs' have made the requisite modest evidentiary showing that there are other similarly situated Plaintiffs; and (2) whether there are similarly situated Plaintiffs interested in joining this matter.  The first red herring presented by Defendant to this Honorable Court is the proposition that Plaintiffs have failed to properly state a claim in their Complaint.  Defendant selectively, completely out of context, writes, in part, "...in excess of forty (40) hours within a work week." (DE 1, at ¶32).  Defendant pounces on this scriveners error to attempt to establish that Plaintiffs have not properly pled their FLSA claims and tries to have this Honorable Court believe that since Plaintiffs did not repeat this inadvertent, unnoticed scriveners error in the pleadings that followed the Complaint, Plaintiffs have somehow abandoned their FLSA claims or decided to take a more non-committed approach.  This is simply preposterous.

Defendant also misses the mark in attempting to show that the Plaintiffs' claims have no merit.  This argument is premature and itself without merit.[3]  Defendant cites mostly unreported cases that are not factually analogous to the case at bar, and then turns to the partial exemption under the FLSA, 207(k), to attempt to misdirect the Court from deciding this Motion on the only two issues before this Court:  (1) whether Plaintiffs' have made the requisite modest evidentiary showing that there are other similarly situated Plaintiffs; and (2) whether there are similarly situated Plaintiffs interested in joining this matter.

However, "the opt-in requirement was intended to reduce 'excessive litigation spawned by plaintiffs lacking personal interest in the outcome.'" Smith v. Soveriegn Bancorp, Inc., 2003 WL 22701017 (E.D.Pa.), citing the Supreme Court of the United States in Hoffman La-Roche

---

[3] Additionally, Defendant presents only a portion of the limited amount of discovery relating to the merits of this case, conducted thus far, to persuade this Honorable Court that this matter has no merit.

Inc. v. Sperling, 493 US. 169.[4] It is undeniable that the law enforcement officers in the instant matter have a personal interest in the outcome of this matter. Furthermore, "[i]t should be stressed that this is an extremely lenient standard. Plaintiffs need only provide some 'modest' evidence, beyond pure speculation, that Defendant's alleged policy affected other employees." Id., at p.3.

> A. **Plaintiffs' Motion to Conditionally Certify a Class SHOULD NOT be decided, at this juncture, based upon the merits of whether Plaintiffs are actually owed overtime**

Defendant asks this Honorable Court to ignore the two-tiered procedure clearly established by this District Court, wherein it requests that Plaintiffs' Motion should be denied at this stage "*for one very basic and fundamental reason: the Plaintiffs have no valid claim.*" (DE 36-8, at p. 1) (Emphasis added). Defendant acknowledges the necessary application of the two-tiered precedent in its opposition papers. "Because courts generally have only minimal evidence at this early stage of a matter, in the form of pleadings and affidavits, the standard is fairly lenient, requiring only that plaintiffs make a 'modest factual showing' that the class members are similarly situated." (De 36-8, at p. 3). The cases cited by Defendant concede that there appears to be two standards with respect to a Plaintiff's burden at this stage. Defendant's Opposition Brief seems to also indicate that "[pl]aintiffs need only provide some 'modest' evidence, beyond pure speculation, that Defendant's alleged policy affected other employees." " *Smith v. Sovereign Bancorp, Inc*., 2003 WL 22701017 (E.D.Pa.), citing the Supreme Court of the United States in *Hoffman La-Roche Inc. v. Sperling*, 493 US. 169.

However, in its attempt to wrongfully misdirect this Honorable Court, Defendant attaches purported time documents titled, "Detailed Time Worked by Employee." Defendant attaches these documents apparently to show that Plaintiffs sometimes worked overtime, for which they

---

[4] This case is cited in Defendant's Opposition Brief.

were paid, and at other times, Plaintiffs did not work overtime. (See DE 36, Exhibit C). Contrary to Defendant's representations to this Court, these documents actually show that during at least a portion of the period in question, Plaintiffs worked more than 171 hours. Yet, Defendant later argues that "[t]o succeed in their bid for conditional certification, Plaintiffs would need to --- at the very least --- allege that they worked more than 171 hours in a 28-day work cycle and were not properly compensated for those hours. Ultimately, they would be required to prove that claim. Here, Plaintiffs have not even made the allegation. **Because they cannot**." (De 36-8, at p. 8). (Emphasis added).

Defendant appears to be attempting to have its "cake and eat it too." In the first instance, Defendant would like this Court to believe that extensive discovery has been exchanged in order to attempt to show that this matter has no merit. Defendant only attaches a small portion of the limited discovery exchanged at this juncture to show that Plaintiffs have not provided any information showing Defendant's policy that violates the FLSA. All discovery conducted at this juncture, by and between the parties, is attached for this Honorable Court's review. (See Exhibit "D") As can be clearly seen from the **ENTIRE** discovery submission (emphasis added), Defendant provided little to no information in its responses to Plaintiffs' Interrogatories, and **ONLY** provided self-serving, second hand documents, in response to all of Plaintiffs' Requests for the Production of Documents (emphasis added). Ironically enough, however, Plaintiffs did not object to any of Defendants' Interrogatories and provided complete detailed responses, clearly detailing Defendant's uniform policy of refusing to keep time, only paying Plaintiffs and all other law enforcement officers for the time contained in their shift, turning a blind eye to the work performed by all law enforcement officers before and after their shifts, and refusing to pay the officers for the pre and post-shift work that was not properly recorded.    In addition,

Defendant conspicuously failed to inform this Honorable Court that the "time records" themselves appear to contradict Defendant's own assertion that none of the Plaintiffs worked more than 171 hours in a 28 day period.[5]

Defendant goes as far as to state that "[t]he record developed in this matter through interrogatories and notices to produce belies the factual underpinnings of Plaintiff's complaint." (See De 36-8. At p. 4) Although artfully written, this last passage taken form Defendant's Opposition papers is just not true. A simple reading of **ALL** of the limited amount of discovery conducted thus far does not support this conclusion. (See Exhibit "D"). Defendant further writes that "[p]ut simply, discovery in this matter has shown that the Police Officers of the City of East Orange were paid the overtime to which they were entitled." (DE 36-8, at p. 1).

To that end, Defendant also inappropriately and out of context, cites Plaintiff Rochester from the June 13, 2013 Interest Arbitration Award. (Attached hereto as Exhibit "E"). Defendant asserts that "Rochester did not testify, and no evidence was presented at the arbitration to suggest, that the officers were not paid for this work (overtime). It would have been a compelling argument in support of such a schedule change. Yet, nowhere in the decision does the Arbitrator reference any position taken by the FOP that their overtime rights were violated in any way by the City" (See 36-9 at p.18). It should not be surprising that this overtime lawsuit and the issues relating to same were not discussed at the contract negotiations. A review of the ENTIRE transcript, reveals that the Arbitrator actually concluded that "the record does not provide any information to show what factors are contributing to the costs of overtime." (See Exhibit "F" at p. 34.). The undersigned is relieved to know that Plaintiff Rochester and opposing

---

[5] Even more telling, is Defendant's own statement, "[t]he only common allegations shared by Plaintiffs are that they performed work outside of their scheduled tours of duty, which does not violate the FLSA." (See 36-8, at pp.14-15). It is incomprehensible to believe that Defendant can even come to this legal conclusion at this juncture. The records that Defendant attached to their Opposition papers themselves indicate that some months Plaintiffs worked more than 171 hours.

6

counsel did not discuss the within FLSA matter without Plaintiff Rochester having his counsel present.

Surprisingly, Defendant cites *Bittick v. City of Foristell,* 4:11CV875MLM, 2011 WL 6945106 (E.D. Mo. Dec. 30, 2011). The Court in *Bittick* **granted** Plaintiffs' Motion for Conditional Class Certification based upon similar if not the same facts presented before this Honorable Court. At the outset, the Court in *Bittick* aptly stated that "[a]t this first step in the process, the court does not reach the merits of Plaintiffs' claims." *Bittick* at p. 2.; citing *Kautsch v, Premier Commc'ns,* 505 F.Supp.2d 685, 688 (W.D.Mo.2007); *Fast v. Applebee's Int'l, Inc.,* 243 F.R.D. 360, 363, (W.D.Mo.2007); *Hoffman v. Sbarro, Inc.,* 982 F.Supp. 249, 262 (S.D.N.Y.1997).

In *Bittick,* the Plaintiffs allege that they were "required to work fifteen minutes prior to their scheduled shifts; that during this time they engaged in activities for the benefit of the Department; that they were not compensated for this time and that Defendants did not keep records for employees' 'pass on' time." *Bittick* at p. 3; also see *Davis v. Novastar Mortg., Inc.,* 408 F.Supp.2d 811, 815 (W.D.Mo.2005). The Declarations attached to Plaintiffs' Motion before this Honorable Court specifically state, with even more detail than the plaintiffs in *Bittick*, as follows:

> **[t]he City does not have a time clock or any other machine to keep track of an officers time that he works;**
>
> **most, if not all, officers work before and after a shift and are not paid for that time;**
> **I know that all of the City of East Orange law enforcement officers had the same time problem as me and also were not paid for all of their time.;**
>
> **[t]he City just has a sheet that the Sergeant usually marks to show that you worked a shift; I see other officers doing the same thing [working before and after a shift without being paid for that time, and Defendant not**

7

> **keeping track of that time] and they have told me that they weren't getting paid for the time they worked before and after their shift;**
>
> **[r]egardless of the job [this officer worked for Defendant as a patrol officer, and on a detective unit] I work as a law enforcement officer for the City of East Orange, I had to work at least 30-45 minutes off the clock every day without pay;**
>
> **I worked before and after my shift and wasn't paid for all of the time. I usually worked at least 10-15 minutes before my shift and 20-30 minutes after my shift. I wasn't paid for any of this time;**
>
> **I remember one specific incident when I told my Lieutenant that right before the end of a shift I needed to write a report that was going to take 3 hours. I asked if I could just write down the important info right after my shift and write the entire report the next day. The lieutenant said he was not going to pay me for that time and that I had to do it that day after my shift. I complained to the Chief, but nothing was done about it;**
>
> **[a]fter my shift, I would work on Field Investigation Reports, Accident Reports, and late shift incident reports for about 30 minutes every day.**

(See DE 34, Exhibit C) (Emphasis added).[6]

Defendant then spends a considerable amount of time writing about the FLSA, Section 207(k), the partial exemption relating to those workers involved in emergent services. However, once again, this 207(k) argument goes to the merits of the case, and is not appropriate at this stage of the litigation.

### B.  The cases cited by Defendant, when read completely and shepardizeed, actually inure to the benefit of Plaintiffs

Defendant relies upon a decision from the Western District of Oklahoma, which is completely apposite procedurally and substantively, from the issues presented before this Honorable Court.    In *Courtright v. Bd. of Cnty. Comm'rs of Payne Cnty.,* Okla., CIV-08-230-D,

---

[6] It is not clear how Defendant makes the assertion that "[t]he only common allegations shared by Plaintiffs are that they performed work outside of their scheduled tours of duty, **which does not violate the FLSA**." (See DE 36-8 pp. 14-15) (Emphasis added).  Taken as a whole, the declarations clearly show that there is a policy of not paying the officers for all the time they worked, by means of a uniform time keeping system that cheats all law enforcement officers out of time they worked for the benefit of Defendant.

8

2011 WL 2181954 (W.D. Okla. June 3, 2011), there were only three opt-in Plaintiffs, as well as two more untimely filed notices of consent to join. In the case at bar, there are three named Plaintiffs, nineteen (19) opt-in Plaintiffs, as well as an additional thirty-three (33) opt-in Plaintiffs that will be either joined to this lawsuit or will file another identical new lawsuit. Additionally, the Plaintiffs in the Oklahoma case only sought damages for a period of only (17) days of work. The present case involves three (3) years. The Oklahoma case involved NO records that showed that Plaintiffs worked more than 161 hours in one month. Whereas, Defendant's own documentary submission clearly shows that Plaintiffs worked more than 171 hours in a one month period. (See DE 36-8 and DE 36-3 through 6, Exhibit C). Lastly, the defendant in the Oklahoma case provided an affidavit in support of their opposition to plaintiffs' motion. In the instant matter, the only affidavit filed on behalf of the Defendant was filed by counsel for Defendant; no affidavit was filed by Defendant for anyone with first-hand knowledge of the issues before this Honorable Court.

Defendant then inappropriately cite *Armstrong v. Weichert Realtors*, 2006 WL 1455781 (D.N.J. May 19, 2006) to support its untenable position that "…not one of them has identified even a single other officer by name who was also affected or had the same experience. Courts have denied certification where the supporting declarations made vague, general statements about other employees but failed to define to whom the affiant referred and how he had knowledge of them." (See 36-9 at p.20). Simply shepardizing *Armstrong,* reveals that Defendant neglected to cite a more similar, recent case, to the facts before this Court. In *Murton v. Measurecomp*, LLC, 2008 WL 5725631 (N.D. Ohio June 9, 2008), not surprisingly, the Court certified its class and distinguished the facts before it from those in *Armstrong*, in the same way that the instant case should be properly distinguished.

In *Armstrong*, the "Plaintiff offers the one-page declaration of William Armstrong as the sole piece of evidence in support of the motion for class certification." *Armstrong* at p. 1. Whereas, more similarly, in *Murton*, the Court aptly pointed out:

> *Armstrong v. Weichert Realtors*, No.05-3120(JAG), 2006 WL 1455781 (D.N.J. May 19, 2006), is distinguishable from the instant case because in Armstrong, the plaintiff produced nothing more than his own affidavit, which did not contain any information concerning even a single other similarly situated employee. Thus, the district court held that the plaintiff failed to make a modest factual showing that a class of similarly situated individuals existed. Id. at *2. In contrast, Plaintiff has produced, in addition to his own affidavit, the affidavit, the affidavit of Todd Murton, the deposition testimony of William Scott, and the letter accompanying the check sent to Todd Murton, all of which support Plaintiff's contention that a class of similarly situated employees exists.

*Murton* at 4.

In the instant case, Plaintiffs have submitted seven (7) declarations, and there are over fifty (50) officers wishing to join this action, all complaining of the same uniform policy Defendant employs in cheating them out of overtime. Mainly, the City refuses to keep accurate time of the officers work; the City only pays the officers for the time during their scheduled shift; all officers work before and after their scheduled shift, for which they are not paid; the City simply turns a "blind eye" towards the officers' unpaid work and benefits from same; the officers all are owed overtime pay pursuant to the terms of the FLSA, Section 207(k). The instant case is not even remotely similar to the facts in *Armstrong*, however, they are somewhat similar to the facts in *Murton*, albeit the instant case provides even more support for the Court to grant certification as the Court did in *Murton*.

Defendant also erroneously relies upon *Dryer v. Altchem Envtl. Servs., Inc.,* CIV 06-2393 (RBK). 2007 WL 7186177, *3 (D.N.J. Sept. 25, 2007), for the proposition that the Plaintiffs in this matter have not provided "some modest evidence, beyond pure speculation, that [the

10

employer's] alleged policy affected other employees." *Dryer* at p. 3; citing *Smith v. Soveriegn Bancorp*.

Defendant seems to be comparing apples to oranges. In *Dryer* three (3) plaintiffs submitted affidavits. One of the three plaintiffs, later recanted his testimony, stating that he was improperly induced into signing the affidavit. Therefore, the Court in *Dryer* had only two affidavits, which were themselves flawed. The Court in *Dryer*, explains, in pertinent part, that the "[p]laintiffs rely on each affiant's statement that '[t]o the best of my information and belief, everyone I worked with was paid the same way and treated the same way..." *Dryer* at p. 4. Here, Plaintiffs clearly state that they know that all law enforcement officers were paid the same way; that none of the Plaintiffs were permitted to use a time clock; and that most plaintiffs worked pre- and post-shift work for which they were not paid. (See DE 34, Exhibit C)[7]

Lastly, the Court in *Dryer,* aptly pointed out that "Plaintiffs' affiants fail to indicate the basis for their beliefs that Altchem paid all of its employees the same way." *Dryer* at p. 4. In this case, Plaintiffs clearly indicate that there are no time clocks, no officers are permitted to clock in and out, all officers are paid hourly, most officers work pre- and post-shift hours for which they are not paid, and even one affidavit states with specificity an actual incident that arose surrounding the alleged insufficient time and payroll practices of Defendant. (See DE 34, Exhibit C, at pg. 13-14).

The most inapposite case cited by Defendant is *Rogers v. Ocean Cable Grp. Inc*., CIV. 10-4198 NLH KMW, 2011 WL 6887154, (D.N.J. Dec. 29, 2011). Defendant appears to cite *Rogers* to show the "failure of the named plaintiffs to equate their personal situations with those of the other putative class members." *Id.* However, yet again, simply shepardizing the case

---

[7] Even more compelling and distinguishable from any case cited by Defendant, there are forty-two (42) law enforcement officers that have expressed a desire to join this lawsuit.

11

reveals that Defendant's reliance on *Rogers* is utterly misplaced. Approximately only one year after *Rogers*, the District Court of New York was faced with an almost identical set of facts as that presented before this Honorable Court. The Honorable District Judge Paul A. Crotty clearly distinguished *Rogers* from the case before him, wherein he writes:

> [w]hile Defendant rely heavily on *Rogers v. Ocean Cable Group, Inc.*, No. 10-4198 (NLH)(KMW), 2011 WL 6887154, at *3-5, 2011 U.S. Dist. LEXIS 149197, at *9-14 (D.N.J. Dec. 29, 2011), that case is distinguishable. In Rogers, the court denied cable technicians' motion to conditionally certify a collective action because: the named Plaintiffs failed to "equate their personal situations with the other putative class members"; and there appeared to be no "factual nexus between the plaintiffs' situation and a uniform company policy." Here, however, named Plaintiffs affirmed that other field technicians worked more than forty hours without overtime pay, based on Plaintiffs' conversations with them. Moreover, unlike *Rogers*, where technicians were paid overtime rates in some situations and not others, see id. At *1, 4-5, 2011 U.S. Dist. LEXIS 149197 at *3, 12-13, Plaintiffs here claim that neither they, nor any technician with whom they spoke, received any overtime pay, despite frequently working in excess of forty hours a week. Thus, Plaintiffs allegations strongly suggest that Defendants' failure to pay overtime was the result of a uniform policy.

Salmon v. Adderley Industries, Inc., 847 F.Supp.2d 561, 565 (S.D. N.Y. March 6, 2012).

The Court in *Rogers* noted that the named plaintiffs failed to provide any evidence that they had personal knowledge or otherwise observed other technicians working in excess of 40 hours per week. Id." (See 36-8 at p. 16). Contrary to the Declarations presented in this matter, the Court in *Rogers* found that the Declarations of the three plaintiffs were not sufficient because "plaintiffs have not provided any evidence that they have personal knowledge or otherwise observed other technicians working in excess of a 40 hour work week." *Id*. Furthermore, the Court in *Rogers* succinctly stated that "[i]t is not surprising then that the plaintiffs' affidavits state that the other putative class members did not receive overtime, 'as far as they know.'" *Id*. Additionally, two declarants in *Rogers* submitted contradictory affidavits wherein "David Rogers states that he was allowed only 30 minutes each evening to turn in his equipment and paperwork.

12

Certification of David Rogers at ¶ 12.  Yet his co-plaintiff, Ivan Derrick, attests, under oath, that he was allowed up to one hour for the same task." *Id*.

Instead of even mentioning *Salomon*, Defendant attempts to fit a square in a round hole, wherein, it states that Officer O'Halloran, and Dwyer's Declarations are similarly contradictory as those in *Rogers*.  The Court in *Rogers* pointed out direct contradictions in the Declarations presented by Plaintiffs.  In the case at bar, Defendant cannot find a direct contradiction, so, it desperately attempts to ask this Honorable Court to use its imagination and take an unsupported leap of logic.  Defendant argues that since some Declarations do not include identical language as that contained in the O'Halloran and Dwyer Declarations, relating to the extra time it took the officers to complete reports, it stands to reason that the other officers who did not mention the exact tasks that they performed before and after a shift for which they were not compensated, must have been able to complete their reports during their shift.  This leap is completely unsupported.  The other Declarants in this matter stated that they worked before and after their shifts and were not paid for that time.  They did not list in detail the tasks that they performed and were not paid for, so, the use of the negative pregnant in this situation is totally misplaced.  The apparent deficiencies in *Rogers* are not present in the instant matter.  Even though In fact, the Declarations in this matter are more like those in *Salomon*, which Defendant neglected to refer to in their opposition brief.

      **C.**  **Plaintiffs have clearly stated a common Employer Practice in Violation of the FLSA as applied to all Plaintiffs and others similarly situated potential opt-in Plaintiffs**

Defendant takes an almost untenable position that "Plaintiffs have yet to identify any City policy that violates the FLSA, or articulate any cognizable claims against the City whatsoever, a similarly situated class of affected individuals simply cannot exist." (See DE 36-8, at p. 4).  On

13

the contrary, as stated numerous times above, Plaintiffs have asserted clear, unmistakable, simple, claims of FLSA violations in their Complaint, Declarations, as well as their Answers to Defendants' Interrogatories.

Defendant's claim that Plaintiffs failed to provide evidence that potential class members were subjected to an unlawful companywide practice or policy is preposterous. Defendant goes as far as to have this Court believe that Defendant was wholly unaware of the nature of the overtime claims made against it by Plaintiffs. However, as stated above, Defendant fails to inform the Court of the information it was provided by Plaintiffs in their answers to Interrogatories, or the fact that other opt-in Plaintiffs desired to join this action.

### D. Plaintiffs have sufficiently shown that there are others who desire to join this action

Despite the twenty-two (22) law enforcement officers that have filed consent to joins in this matter, and the twenty (20) other law enforcement officers that have also signed consent to join forms and desire to join this action, Defendants continue to maintain that Plaintiffs have not met the requisite showing that there are other employees that desire to opt-in to this lawsuit. In fact, not only is there a strong desire to opt-in, but almost one-quarter of the entire potential class have already signed Notices of Consent to Join in the instant matter.

### E. Plaintiffs' do not oppose to Defendant's Motion to Dismiss Count II of Plaintiffs' Complaint.

### CONCLUSION

It is axiomatic that where, like here, a group of employees having the same job duties, rates of pay, and are subjected to the same illegal pay practices of their employer, are similarly situated for purposes of the FLSA's collective action mechanisms. At this stage, the Plaintiffs need only demonstrate a "reasonable basis" to believe that similarly situated individuals exist in

the proposed class. Moreover, as stated above, forty two (42) similarly situated law enforcement officers have come forward to assert their claims against Defendant. As such, Plaintiffs' motion for conditional class certification should be granted.

Dated: July 15, 2013											Respectfully submitted,

                 s/ Andrew I. Glenn
                 Andrew I. Glenn
                 E-mail: AGlenn@JaffeGlenn.com
                 New Jersey Bar No.: 026491992
                 Jodi J. Jaffe
                 E-mail: JJaffe@JaffeGlenn.com
                 New Jersey Bar No.: 022351993
                 **JAFFE GLENN LAW GROUP, P.A.**
                 66 Willow Avenue
                 Suite 1A
                 Hoboken, New Jersey 07030
                 Telephone: (201) 687-9977
                 Facsimile: (201) 595-0308
                 *Attorneys for PlaintiffS*

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on July 15, 2013, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

                 s/ Andrew I. Glenn
                 Andrew I. Glenn, Esq.

## **SERVICE LIST**

MATTHEW J. GIACOBBE
CLEARY GIACOBBE ALFIERI JACOBS, LLC
7 JAMES STREET
FLORHAM PARK, NJ 07932
973-845-6700
Fax: 973-845-6698
Email: mgiacobbe@cgajlaw.com
Attorney for Defendant
*Service via CM/ECF*

RICHARD A. GANTNER
CLEARY, GIACOBBE, ALFIERI, JACOBS, LLC
169 Ramapo Valley Rd.
Upper Level 105
Oakland, NJ 07436
(973) 845-6700
Fax: (201) 644-7601
Email: rgantner@cgajlaw.com
Attorney for Defendant
*Service via CM/ECF*